102 P.3d 360

**STATE of Hawai'i, Respondent/Plaintiff–Appellee**

v.

**Arthur MARCOS, Petitioner/Defendant–Appellant.**

**No. 25452.**

Supreme Court of Hawai'i.

Dec. 2, 2004.

ly court of the first circuit[1] (the court). Judgment of conviction was filed on September 25, 2002. On October 14, 2004, the Intermediate Court of Appeals (the ICA) filed a summary disposition order (SDO) affirming the conviction. On November 12, 2004, Petitioner applied for a writ of certiorari.[2] On November 18, 2004, certiorari was granted.

## I.

Petitioner raises two questions in his petition: (1) "Whether the ICA erred in holding that [Petitioner's] federal and state constitutional rights to confrontation and [Hawai'i Rules of Evidence (HRE) ] 609.1 were not violated when he was barred from cross examining the complainant as to her primary motive to fabricate the allegations because he had been able to confront and cross examine her concerning secondary motivations" and (2) "[w]hether the ICA erred in holding that [Petitioner] did not have a right to play the audiotape of the complainant's 911 call to the jury, the best evidence of the complainant's demeanor, because other secondary testimonial evidence about her demeanor was heard by the jury[.]"

Earle A. Partington, Honolulu, for petitioner/defendant-appellant, on the application.

MOON, C.J., LEVINSON, NAKAYAMA, ACOBA, and DUFFY, JJ.

Opinion of the Court by ACOBA, J.

Petitioner/Defendant–Appellant Arthur Roderick Marcos (Petitioner) was convicted, upon a jury's verdict, of abuse of a family or household member, Hawai'i Revised Statutes (HRS) § 709–906(1) (Supp.2001), in the fami-

## II.

The following is set forth in the application and briefs. Trial began on August 7, 2002, with the hearing on motions in limine filed by Respondent/Plaintiff–Appellee State of Hawai'i (the prosecution). During that hearing, Petitioner argued that he had the right to cross-examine the complainant to establish that she had a motive to see that Petitioner was convicted in order to assist her in a pending family court case concerning custody of the minor child of Petitioner and the complainant. The court ruled as follows:

> (1) grave errors of law or of fact, or (2) obvious inconsistencies in the decision of the intermediate appellate court with that of the supreme court, federal decisions, or its own decision, and the magnitude of such errors or inconsistencies dictating the need for further appeal.
>
> HRS § 602–59(b). The grant or denial of a petition for certiorari is discretionary with this court. *See* HRS § 602–59(a).

---

1. The Honorable Darryl Y.C. Choy presided.

2. Pursuant to HRS § 602–59 (1993 & Supp. 2003), a party may appeal the decision of the Intermediate Court of Appeals (ICA) only by an application to this court for a writ of certiorari. *See* HRS § 602–59(a). In determining whether to accept or reject the application for writ of certiorari, this court reviews the ICA decision for:

That's—I understand that she may have a bad motive. The problem is she has a right to explain whether or not that motive is cemented in fact. Now if this man has been horrible to her, she would have every reason to fight for custody, use everything within her means to seek custody. That's the other side of this coin. Or she's just a very scorned woman that would do anything to hurt your client. I don't know what it is.

You're trying to convince this court and the jury that she is merely a woman scorned, nothing ever happened, and she's an evil person. The problem with that is that I can't accept that for face value and allow and require the State to remain silent. And that's where you run into a heck of a lot of problems about prior acts.

So your client's going to have to decide what he wants to do. And what I really suspect's going to happen, I'm going to allow it, you're going to do it, and then we will have appellate attorneys who was going to say that was wrong.

So, [defense counsel], I'm ready to rule at this point. I will prohibit you from bringing anything in regarding paternity. *I will prohibit you from bringing anything in regarding a child custody fight.*

(Emphasis added.)

At trial, complainant testified that she lived with Petitioner and had a five-year-old son by him. On January 23, 2002, at about 7:30pm, the complainant came home and was surprised to find Petitioner. Petitioner had the odor of alcoholic beverage on his breath and was "kind of upset" and he asked where complainant and their son had been. They began to argue and Petitioner suddenly struck complainant on the right side of her head with a closed fist. Thereafter, Petitioner kicked complainant in the right thigh. Her leg was bruised from the kick.

Complainant called her friend, Connie Comiso (Comiso). Comiso's boyfriend took complainant to Comiso's house. Later she decided to call the police. She was crying and talking to Comiso's boyfriend. The police came and took a report. Complainant did not have any photographs taken of the injuries from Petitioner's blow until February 5, 2002. It was not until then that a counselor suggested that photographs be taken.

On cross-examination, complainant admitted that in her statement to the police she had mentioned nothing about Petitioner having been drinking on the night in question. Complainant agreed that the first time she went to a counseling center to seek assistance she did not tell anyone there that she had a physical injury on her leg. Complainant stated that she was scared when she telephoned the police from Comiso's apartment.

Comiso testified that early in the evening on January 23, 2002, she had been running with complainant. About 7:30pm, complainant telephoned her and asked Comiso to come and get her. Her boyfriend brought complainant to Comiso's apartment. Complainant was crying and upset. About three-and-a-half hours after arriving at Comiso's apartment, complainant called the police. Comiso saw a red mark on complainant's thigh.

Defense counsel argued that complainant had a motive to "fake the injury" because Petitioner had indicated after the incident that he intended to obtain custody of their child:

[DEFENSE COUNSEL]: Uh, Your Honor, the last thing is *I know that I'm not allowed to get into her seeking custody or anything that she did, any motivation for anything that she did because that would open the door to her motivation possibly of bringing up prior abuse. But, Your Honor, I believe that I should be allowed to establish that [Petitioner] on his own filed for paternity and for custody on February 13th.*

[PROSECUTOR]: Again, Your Honor, after the fact (inaudible) information. Object to the—

THE COURT: How would this help the jury decide whether or not your client committed abuse of a family or household member?

[DEFENSE COUNSEL]: *Because it goes to the client's—it goes to the complaining witness' motive to fake the injury*

*and to come to court and testify against him.*

THE COURT: Because he filed for paternity?

[DEFENSE COUNSEL]: Because he filed. *When they went to court on the 4th for the restraining order, she was informed that [Petitioner] would be seeking custody. And that day when she got done she called the counselor's office and said I need help. The next day they got her down, they set her up with legal services to fight the custody that my client had filed, not her, but my client. And then she also says, oh, and guess what, I've got an injury. That's the first time that we see that injury is the day after—*

THE COURT: [Defense counsel], slow down.

[DEFENSE COUNSEL]: [Petitioner] *filed for custody.*

. . . .

THE COURT: And then you're going to argue to the jury that because she filed this manner [sic] after the filing of this paternity complaint therefor[e] her motives—

[DEFENSE COUNSEL]: No, no, no, no. *It goes to the injury, Your Honor. The photograph was taken on the 5th. She was informed at the court hearing on the restraining order that he was going to be—that—with his attorney that they were going to be seeking paternity and custody.* Because the Family Court judge wanted to know where this was all going.

They said we're going to file it and they did file it on the 13th, a week and a half later or whatever. So my position is that *she did not come up with this injury that the State has admitted a photograph of until the day after she was informed by [Petitioner]'s lawyer at court that he was going to be seeking custody of the child.*

. . . .

[PROSECUTOR]: Your Honor, the State would oppose this 'cause this is based on the same issue we already did in motions in limine. This is the same issue about motivation for the custody battle and everything else that's going on after the

fact of the abuse. This court already ruled that if that information comes in, we're going to have a whole trial 'cause if that—if [defense counsel]'s imputing the motives for everything that happened after the abuse, then all of the prior bad acts are going to have to come in 'cause the State's going to have to rebut that, no, this isn't the reason. The reason is because she's been abused multiple times by [Petitioner].

(Emphases added.) The prosecution then called Carol Gaylord (Gaylord), a domestic violence crisis counselor who counseled complainant after the alleged assault. At a follow up interview on February 5, 2002, Gaylord noticed a bruise on complainant's leg after she asked complainant if she had any injuries. Gaylord took photographs of complainant's injury. One of the pictures was admitted as State's exhibit 1. Defense counsel sought to ask Gaylord if complainant had specifically asked for legal assistance to contest the family court custody case because the discovery showed she had. But defense counsel was barred from doing so. The prosecution then rested.

The defense called Honolulu Police Officer Travis Torco who responded to complainant's call to the police. Officer Torco stated that complainant informed him that she had been punched in the right temple and punched in the right thigh, but when he made a visual check he did not see any redness or other markings at the locations.

Defense counsel requested a recess so that Officer Torco could listen to the brief tape recording of complainant's 911 call to see if he could identify complainant's voice. The prosecution objected that it was improper to offer the tape through the officer and that it would be inadmissable hearsay. Defense counsel asserted that the tape recording was not being offered for the truth of the matter asserted, but for the fact that when complainant made the call she was calm and collected. The tape was only about two minutes in length. The court denied defense counsel's request. On cross-examination, Officer Torco stated that complainant was crying and distraught, but would sometimes be calm. On redirect examination, Officer Torco stated that he had received no information

on the night of the complaint that Petitioner might have been drinking.

After the lunch break, defense counsel then sought to recall Gaylord and play the 911 tape to have Gaylord identify complainant's voice. Again, defense counsel proffered that the purpose was to show that complainant was "[c]alm and not excited and hysterical." The prosecutor renewed his claim that the tape was inadmissible hearsay. The court and the prosecutor recalled that Comiso had testified that complainant was calm when she telephoned the police from Comiso's home. Defense counsel correctly pointed out that Comiso had said that complainant was upset when she called.

A transcript of the 911 call was then read into the record, but the court refused to permit the playing of the 911 tape recording on the ground that the recording was hearsay. The jury found Petitioner guilty as charged on August 9, 2003.

### III.

■ As to the first point raised in Petitioner's application, the ICA held that

[a] trial court does not violate a defendant's confrontation clause rights by barring evidence of the complainant's motive to bring false charges and testify falsely, if the trial court does not abuse its discretion in applying [HRE] Rule 403 (1993) to the proffer, *State v. Balisbisana,* 83 Hawai'i 109, 114, 924 P.2d 1215, 1220 (1996), and so long as "the constitutionally required threshold level of inquiry has been afforded the defendant[,]" *id.*—in other words, "as long as the jury has in its possession sufficient information to appraise the biases and motivations of the witness[,]" *id.* (citation and internal quotation marks omitted), absent the proffered evidence. *Id.* at 116, 924 P.2d at 1222.

SDO at 2. The ICA noted that (1) "the motive in question applied not so much to [complainant's] original report of abuse, but to her alleged after-the-fact fabrication of evidence of a resulting injury[,]" SDO at 3, and (2) "we share the family court's concern that, had custody become an issue, the abuse

trial would have drowned in the vortex of a custody dispute[.]" SDO at 4.

In *Balisbisana,* the circuit "court excluded reference to the complaining witness's conviction for harassing Balisbisana" against his claim of the right "to confront the complaining witness and cross-examine her to expose evidence of her motive for bringing false charges against him." 83 Hawai'i at 111, 924 P.2d at 1217. This court vacated the conviction and remanded the case for a new trial. *Id.* In that case, at "the start of the jury trial on August 15, 1995, the prosecution made an oral motion in limine, requesting that Balisbisana be prohibited from adducing evidence of prior bad acts of the complainant without an offer of proof." *Id.* The circuit court granted the motion in limine pursuant to HRE Rule 403, stating much of the same concerns with the introduction of prior "bad acts" at trial as did the court in the instant case:

THE COURT: At this time the court is going to grant the state's motion in limine, evidence not to be used in that—the court at this time given the current offer of proof and status of the record now believes that this evidence, the probative value of the—substantially is outweighed by the danger of unfair prejudice, confusion of issues, confusing the jury, et cetera. This is without prejudice if you wish to raise this issue again once we've heard further testimony from the victim and unless—

[DEFENSE COUNSEL]: Your Honor, may I also have a ruling as to why this court would deny the basis of this evidence, admission of this evidence under 609 point one. Evidence of bias, interest and motive.

THE COURT: Under 609 point one—

[PROSECUTOR]: *Your Honor, the State would make the argument that 403 has a reason in there.*

While evidence may be admissible for one purpose even though relevant may be relevant under 609 one. Definitely more prejudicial than probative.

THE COURT: Also frankly in these cases where there happens to be a series of time that parties have been brought up for domestic violence allegations, one versus the other. *Quite frankly each can go*

*back and forth and say the only reason I am here is because you complained about me before.* This *would be a never ending*—each time 609 point one would be used for—would essentially be a see saw.

*Id.* at 112–13, 924 P.2d at 1218–19 (emphases added). However, this court said:

> Under HRE Rule 609.1 (1993), "the credibility of a witness may be attacked by evidence of bias, interest or motive." The trial court's determination that the proffered evidence is probative of bias, interest or motive is reviewed under the right/wrong standard.

> "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." HRE Rule 403. . . .

> The scope of cross-examination is generally within the sound discretion of the trial court. While the right of cross-examination protected by the Confrontation Clause of the Sixth Amendment, may not be unduly unrestricted, . . . it has never been held that this right is absolutely without restriction. *However, the trial court's discretion in exercising control and excluding evidence of a witness's bias or motive to testify falsely becomes operative only after the constitutionally required threshold level of inquiry has been afforded the defendant. The Sixth Amendment is satisfied where sufficient information is elicited to allow the jury to gauge adequately a witness' credibility and to assess his or her motives or possible bias.* "When the trial court excludes evidence tending to impeach a witness, it has not abused its discretion as long as the jury has in its possession sufficient information to appraise the biases and motivations of the witness." *United States v. Easter,* 66 F.3d 1018, 1022–23 (9th Cir.1995) (citations omitted), *cert. denied,* 516 U.S. 1150, 116 S.Ct. 1026, 134 L.Ed.2d 104 (1996).

> . . . .

> An accused's right to demonstrate the bias or motive of prosecution witnesses is protected by the sixth amendment to the United States Constitution, which guarantees an accused, *inter alia,* the right to be confronted with the witnesses against him or her. Indeed, the main and essential purpose of confrontation is *to secure for the opponent the opportunity of cross-examination, . . .* and the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross examination.

*Id.* at 114–15, 924 P.2d at 1220–21 (brackets, some internal quotation marks and citations omitted) (ellipsis points in original) (emphasis in original and emphasis added). Relying further on the Supreme Court's decision in *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), *Balisbasana* quoted *inter alia,* the following:

> While counsel was permitted to ask the witness *whether* he was biased, *counsel was unable to make a record from which to argue why the witness might have been biased or otherwise lacked that degree of impartiality expected of a witness at trial. . . .* On these facts it seems clear to us that to make any such inquiry effective, *defense counsel should have been permitted to expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness.* Petitioner was thus denied the right of effective cross-examination.

*Id.* at 318, 94 S.Ct. 1105 (emphases in original).

*Balisbisana,* 83 Hawai'i at 115, 924 P.2d at 1221 (brackets omitted) (ellipsis points in original) (emphases added). Thus, this court indicated that the defense should have been allowed to "expose the fact from which the jurors could appropriately draw inferences relating to the [complainant's] motive or bias."

The appropriate inquiry, therefore, is whether the jury had sufficient information from which to make an informed appraisal of Fujimoto's motives and bias, absent evidence of her conviction for harassing Balisbisana. If so, the trial court's limitation on Balisbisana's right to cross-examine Fujim-

oto to show motive to bring false charges and testify falsely, on the basis of unfair prejudice, confusion of issues, confusing the jury, et cetera, was not an abuse of discretion. In this case, as in *Van Arsdall* and *Davis, defense counsel was not permitted to expose the fact from which the jurors could appropriately draw inferences relating to Fujimoto's motive or bias. The trial court prohibited all inquiry into Fujimoto's conviction for harassing Balisbisana; yet a reasonable jury might have received a significantly different impression of Fujimoto's credibility and Balisbisana's counsel been permitted to pursue his proposed line of cross-examination.* Like the Court in *Davis,*

> we cannot speculate as to whether the jury, as sole judge of the credibility of a witness, would have accepted this line of reasoning had counsel been permitted to fully present it. But we do conclude that the jurors were entitled to have the benefit of the defense theory before them so that they could make an informed judgment as to the weight to place on Fujimoto's testimony which provided a crucial link in the proof ... of Balisbisana's act.

*Davis,* 415 U.S. at 317, 94 S.Ct. 1105....

*Id.* at 116, 924 P.2d at 1222 (emphasis in original and emphasis added) (internal quotation marks, citations and brackets omitted) (ellipsis points in original). The defense had the right on cross examination to establish bias or prejudice. As in *Balisbisana,* here the court prohibited *all* inquiry into the alleged motive or bias for faking injury. However, "[t]he jurors were entitled to have the benefit of the defense theory before them so that they could make an informed judgment as to the weight to place on [complainant]'s testimony which provided 'a crucial link in the proof[.]' " *Id.* Because Petitioner's right of confrontation, as guaranteed by the sixth amendment to the United States Constitution and article .I, section 14 of the Hawai'i Constitution, was violated, the ICA gravely erred and the case must be remanded for a new trial.

## IV.

As to the second point, the ICA held that "[t]here was ample evidence already adduced tending to prove ... the [complainant]'s demeanor during her 911 call[,]" "defense counsel" "argue[d] ... the [complainant] was calm during the 911 call[,]" "the State's closing argument conceded there was evidence tending to show the [complainant]'s calm demeanor[,]" and "if error there was in the family court's ultimate conclusion that the audiotape proffered for that purpose was inadmissible hearsay, the audiotape was cumulative[.]" SDO at 5. Petitioner contends in his writ that "[Petitioner] had the right to have the jury hear the best evidence of the complainant's demeanor—the 911 tape and not rely on the *opinions* of other witnesses as to her demeanor[ ]" (emphasis in original), relying on *State v. Elwell,* 793 A.2d 499 (Me.2002). Neither the ICA nor the prosecution discuss *Elwell.*

The facts in *Elwell* involved a domestic abuse situation. The Maine Supreme Court ruled that the tape of the 911 call was not hearsay for the purpose of demonstrating the complainant's voice inflection and tone in the 911 call, and exclusion of the tape on hearsay grounds was prejudicial:

> Elwell requested that the court allow the jury to hear the audiotape of Miller's 911 call. *The State objected on hearsay grounds, but Elwell explained that the tape was not being offered for the truth of the matter asserted; instead, Elwell was offering it to demonstrate to the jury Miller's flat vocal inflection and calm tone of voice during the call. ...*

> None of the objections raised by the State is a valid basis for exclusion of the 911 tape. *The hearsay objection was not pertinent because the defendant was not offering the tape for the truth asserted in any of the statements on the tape.* Elwell expressly stated that he was offering it for the jury to hear Miller's vocal inflection. The tape did not meet the definition of hearsay, and, *therefore, the hearsay objection missed the mark.*

> ... A jury is competent to evaluate the demeanor of a witness without an expert to assist in the evaluation. *See State v. Riz-*

zo, 1997 ME 215, ¶ 19, 704 A.2d 339, 344 [ (Me.1997) ] (noting probative value of spontaneity of statements on tape of 911 call). The tape was not inadmissible on the basis that it would be irrelevant without an expert.

. . . .

*We conclude that it was an abuse of discretion to exclude the tape. The State has not argued that the exclusion of the tape was harmless error. Indeed, where the verdict of guilty depended upon the jury's finding Miller credible, the exclusion of admissible evidence that had a tendency to undermine her credibility is prejudicial.* We cannot conclude that it is highly probable that the exclusion did not affect the jury's verdict. Because the 911 tape should not have been excluded, we vacate the conviction.

*Id.* at 502–03 (some citations omitted) (emphases added).

The evidence was not "cumulative" as the ICA indicated because the jury was entitled itself to decide whether complainant's "vocal inflection and . . . tone of voice during the call," *id.* at 502, was calm or not. Additionally, this court has said that

[i]n order for evidence to be considered "cumulative" for HRE 403 purposes, *it must be substantially the same as other evidence that has already been received. See Aga v. Hundahl,* 78 Hawai'i 230, 241, 891 P.2d 1022, 1032 (1995) (holding that one expert's testimony could be considered cumulative where "it did not offer a different opinion" than another expert's prior testimony); *State v. Klafta,* 73 Haw. 109, 115, 831 P.2d 512, 516 (1992) (holding that trial court did not abuse its discretion in admitting witnesses' testimonies over the defendant's objection that the testimonies were cumulative where the witnesses "each observed many of the same things, but they also observed some things which were different")[.]

*State v. Pulse,* 83 Hawai'i 229, 247, 925 P.2d 797, 815 (1996) (emphasis added) (some citations omitted). Complainant testified on cross examination that she was feeling "scared" when she called the police but that she could not remember whether she was crying at the time of the 911 phone call. Comiso testified on cross examination that complainant's demeanor at the time of the 911 phone call was that "[s]he was upset but she had stopped crying. But she was upset." Such evidence only emphasized the fact that the witnesses "observed some things that were different" as to the disputed issues. Hence, the jury should have been allowed to judge for itself whether complainant was calm or not when she reported the incident to the police. Accordingly, "the exclusion . . . as cumulative under HRE 403 [would be] an abuse of discretion." *Id.* The court was wrong in excluding the playing of the tape and the ICA gravely erred in sustaining the court.

V.

Because there were no witnesses to the alleged abuse, complainant's credibility was at issue and evidence of her alleged motive or bias and demeanor bore upon that issue. Under the circumstances, Petitioner is entitled to a new trial. The prosecution did not argue any error was harmless beyond a reasonable doubt. Accordingly, the ICA's October 14, 2004 SDO is reversed, the court's September 25, 2002 judgment of conviction is vacated, and the case is remanded to the court for a new trial.