**Electronically Filed
Supreme Court
SCWC-11-0000073
08-AUG-2012
09:47 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAIʻI

---o0o---

STATE OF HAWAIʻI, Respondent/Plaintiff-Appellee,

vs.

DONALD LEVELL, JR., Petitioner/Defendant-Appellant.

NO. SCWC-11-0000073

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(ICA NO. CAAP-11-0000073; CASE NO. 1P110-10648)

August 8, 2012

RECKTENWALD, C.J., NAKAYAMA, ACOBA, AND MCKENNA, JJ.,
AND CIRCUIT JUDGE CASTAGNETTI, IN PLACE OF DUFFY, J., RECUSED

OPINION OF THE COURT BY ACOBA, J.

We hold that (1) the refusal of the District Court of the First Circuit (the court) to allow Petitioner/Plaintiff-Appellant Donald Levell, Jr. (Petitioner) to cross-examine Malia Avila (Complainant) regarding whether she had stolen his credit cards and used them after the alleged incident for which

Petitioner was tried violated Petitioner's right to confrontation guaranteed by article I, section 14 of the Hawai'i Constitution[1]; (2) Complainant's acts, if believed by the trier of fact, might establish her motive to fabricate claims against Petitioner or to testify falsely against Petitioner at trial; and (3) the court's error was not harmless beyond a reasonable doubt.  We therefore vacate the March 2, 2012 judgment filed by the Intermediate Court of Appeals (ICA) pursuant to its February 14, 2012 Summary Disposition Order (SDO)[2], affirming the court's January 12, 2011 Judgment convicting Petitioner of Harassment, Hawai'i Revised Statutes (HRS) § 711-1106(1)(a)[3], and remand for a new trial.

I.

On October 26, 2012, Petitioner was charged by Respondent/Plaintiff-Appellee State of Hawai'i (Respondent) with Harassment, for allegedly shoving Complainant and thereby

---

[1]     Haw. Const. art I, § 14 provides in relevant part:

Section 14.  In all criminal prosecutions, the accused shall enjoy the right to . . . to be confronted with the witnesses against the accused[.]

[2]     The SDO was filed by Presiding Judge Daniel R. Foley, the Honorable Lawrence M. Reifurth, and the Honorable Lisa M. Ginoza.

[3]     HRS § 711-1106(1)(a) (Supp. 2010) provides:

**Harassment.**

(1)  A person commits the offense of harassment if, with intent to harass, annoy, or alarm any other person, that person:

(a)  Strikes, shoves, kicks, or otherwise touches another person in an offensive manner or subjects the other person to offensive physical contact.

subjecting her to offensive physical contact.  Petitioner's bench trial was held on January 12, 2011.[4]

Prior to the commencement of trial, Petitioner moved under Hawai'i Rules of Evidence (HRE) 404(b)[5] for permission to cross-examine Complainant on whether she had stolen Petitioner's credit cards[6] and used them after he was arrested.  Petitioner argued that the unauthorized use of the credit cards was relevant to prove Complainant's motive to accuse Petitioner of the charged incident and to testify falsely against him at trial.  Petitioner contended that the evidence was not highly prejudicial, and that any prejudice was outweighed by the probative value of the evidence.[7]  Respondent opposed Petitioner's request on the grounds that Petitioner's claim that Complainant stole his credit

---

[4]     The Honorable Faye Koyanagi presided.

[5]     Hawai'i Rules of Evidence 404(b) provides:

(b) Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible where such evidence is probative of another fact that is of consequence to the determination of the action, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, modus operandi, or absence of mistake or accident. In criminal cases, the proponent of evidence to be offered under this subsection shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the date, location, and general nature of any such evidence it intends to introduce at trial.

[6]     Petitioner uses "credit cards" and "debit cards" interchangeably. This opinion refers to the items allegedly stolen as "credit cards."

[7]     HRE Rule 403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

cards was just an allegation and had no bearing on whether Petitioner committed the charged offense. Respondent also stated that the alleged theft was "being investigated up [until] five minutes ago in which the [Petitioner] apparently was talking to the police about it."

The court ruled in favor of Respondent, stating that it would not allow cross-examination as to the credit card theft because that issue was "not relevant to the elements of the harassment on the date on which it occurred." Also, according to the court, although the alleged theft might go to motive, it was highly prejudicial to the Complainant, "especially in light of the fact that [it was] currently being investigated[,]" and that cross-examination might cause Complainant to violate her right against self-incrimination.

At trial, the testimony of the parties established that at the time of the alleged offense, Petitioner had been living in an apartment located in Waikiki for approximately ten years. About a month prior to the alleged incident of harassment, Petitioner met Complainant as he was walking along the beach. Petitioner invited Complainant for dinner at his apartment.

Complainant told Petitioner that she did not have a place to stay because her father was sick in the hospital, and she had just moved to Hawaiʻi from Las Vegas. Petitioner invited Complainant to stay at his apartment. Complainant acknowledged that she did not have a place to live when she met Petitioner,

and that she resided at Petitioner's apartment without paying rent. Complainant referred to Petitioner as her boyfriend.

When Complainant moved in with Petitioner, she did not have a cell phone. According to Petitioner, Complainant told him that she had lost her cell phone on a bus. Since Petitioner had three phones, an "IPhone" and two "Motorola" phones, Petitioner allowed Complainant to have one of his Motorola phones. Complainant claimed that Petitioner "gave" her the phone; Petitioner claimed that he only allowed Complainant to use the phone.

At about 6:00 p.m. on October 25, 2010, Complainant arrived at Petitioner's apartment from work. According to Complainant, when she arrived, Petitioner was drinking an alcoholic beverage. Petitioner then approached Complainant with a cell phone, in order to transfer the "SIM" card in her phone to his phone. Complainant went to the bathroom, and while she was in the bathroom, Petitioner took the SIM card from her phone and put it in his phone. When Complainant came out of the bathroom, she asked Petitioner for the SIM card, but Petitioner refused to return it to her.

According to Complainant, she asked for the SIM card again, and Petitioner stood up, walked towards her, and pushed her in the chest with his open palms. Complainant fell and hit her back and rib area on a rattan chair that was next to her. Complainant had no visible injuries as a result of the incident.

Complainant then got up, told Petitioner that she was going to call the police, went "downstairs," and called the police from the "security's phone." Complainant claimed that she was not carrying a cell phone at that point. When the police arrived, Complainant gave them a statement. Petitioner then came downstairs, and the police arrested him. According to Complainant, she returned to the apartment that evening with the police in order to retrieve her belongings and never returned to the apartment or saw Petitioner again until the day of trial.

On cross-examination, Petitioner's counsel asked Complainant about the incident involving the phone. Complainant admitted that when Petitioner exchanged the SIM card from her phone to the second phone, Petitioner gave her the second phone. Complainant, however, was upset because she wanted the phone Petitioner had originally given to her. Complainant then asked Petitioner several times to return her phone. Petitioner said that he was not going to give Complainant the phone and that she could use the second phone. Complainant then asked for her phone again. Complainant testified that Petitioner then stood up and shoved her.

Near the end of cross-examination, Petitioner's counsel again asked the court for permission to ask Complainant if she had used Petitioner's credit cards after he was arrested. Petitioner's counsel told the court that the questions were relevant to "the motive of her lying, making this whole story up

. . . It is highly relevant to . . . our defense and not outweighed by prejudice." Petitioner's counsel stated that Complainant "can simply deny the allegation. But I have the right to ask her that." Respondent objected "as to relevance[,]" and because there was "an allusion to a conspiracy to get [Petitioner] arrested to get him out of the apartment that I don't believe the defense has any basis for[.]" Respondent asked the court to advise Complainant of her right not to incriminate herself.

The court denied Petitioner's request stating, "[I am] not going to allow counsel to ask [Complainant] what she took from the apartment. It's alluding again to the theft of the credit cards. And it's based on the same rule as before. It's not relevant and prejudicial." Petitioner then moved for a directed verdict, but the court denied the motion.

Petitioner then testified as to his recollection of the events of October 25, 2010. According to Petitioner, when Complainant arrived at his apartment around 6:00 p.m. he was sitting on a stool in the bathroom. Petitioner asked Complainant if she would take the SIM card out of her phone and give it to him. Petitioner then took the SIM card and put it in another Motorola phone, called the phone from his IPhone to make sure the Motorola phone worked, and gave Complainant the working phone. Complainant was not satisfied and asked Petitioner to return her original phone. Complainant then took both phones and left.

When Petitioner came out of the bathroom, Complainant was gone. Petitioner then went "downstairs" to find her. Petitioner stated that Complainant had called the police from the apartment. When Petitioner went "downstairs," he saw that Complainant was talking to several police officers. Petitioner walked over to the officers and said, "I'm probably the gentleman that you -- that you're looking for, 'cause I was trying to find out what -- you know, what the problem is, what's going on, what -- what they were called for." Petitioner testified that an officer grabbed him, handcuffed him, and shoved him into the back of a squad car.

Petitioner claimed that he "never put [his] hands on [Complainant], never -- never had any physical contact with her or any other woman in my life." At the time of trial, Petitioner walked with a cane because his knee had been replaced and he needed back surgery. Petitioner explained that he had had carpal tunnel surgery two weeks before the alleged incident with Complainant and could not "grip or hold anything" because "[j]ust a little touch was painful."

On cross-examination, Petitioner testified that the conversation regarding the phones was the only conversation he had with Complainant that night. Petitioner also related that one of the reasons he went "downstairs" to look for Petitioner was that he was going to tell her that he did not want her to stay at the apartment anymore. When Respondent asked Petitioner

8

whether he was going to "kick" Complainant out of the apartment "solely because [of] the cell phone thing," Petitioner answered, "No. I had a -- I had already noticed that she had been stealing from me--" Respondent objected and the court sustained the objection.

In its closing argument, Respondent emphasized that Complainant was credible and that the shove was a result of the tension that had built up between Petitioner and Complainant. Petitioner's counsel argued that the details of Complainant's testimony did not "add up" and that she "clearly made up this allegation to get [Petitioner] arrested so she could remain staying at this place, where she's not paying rent." Respondent replied that the evidence showed that Complainant had not been back to the apartment.

II.

After the court heard the parties' closing arguments, it found Petitioner guilty, stating:

> Based on the evidence presented and viewing the credibility of the witnesses, the court is going to find that [Respondent] has proven its case beyond a reasonable doubt as to each and every element.
>
> Although the testimony is diametrically opposed as to whether or not there was an offensive touching, I believe the credibility of the complaining witness was more credible than that of the [Petitioner].
>
> One damaging or incriminating statement made by [Petitioner] was when he went down to see the police he said and told them I am the gentleman you're looking for. Which means something illegal or criminal had occurred in the apartment prior.
>
> The biomechanics of the fall is consistent with [Complainant's] rendition of it. She was shoved. Perhaps seeing both open palms, not knowing exactly which force was greater, she did say she fell onto the bed first, which could then mean that she angled her body as she fell onto the floor and chair.

9

> She did point to the left side of her shoulder when she said she had her purse there, which is consistent with where the purse would have ended up.

(Emphases added.)

### III.

The ICA affirmed Petitioner's conviction.  In its SDO, the ICA stated, inter alia, as follows:

> Introduction of Complainant's alleged credit card theft from [Petitioner] after the alleged harassment occurred was subject to exclusion by HRE Rule 403 after a "cost-benefit calculus and a delicate balance between probative value and prejudicial effect." State v. Balisbisana, 83 Hawaiʻi 109, 114, 924 P.2d 1215, 1220 (1996)(internal quotation marks and citations omitted)). "Exclusion of relevant evidence is reviewed for an abuse of discretion." State v. Cordeiro, 99 Hawaiʻi 390, 404, 56 P.3d 692, 706 (2002)). . . .  In the instant case, there was not abuse of discretion in prohibiting [Petitioner] from raising Complainant's alleged theft of his credit card after the alleged harassment occurred. . . .
>
> Even if there was error by the district court, it was harmless because [Petitioner's] own testimony provided substantial evidence in addition to Complainant's testimony to support his conviction. See State v. Mars, 116 Hawaiʻi 125, 139, 170 P.3d 861, 875 (App. 2007)). "[Petitioner] testified that he never had physical contact with Complainant on the day in question, and yet after Complainant left the apartment, he testified that he went downstairs, saw Complainant with a police officer and said 'I'm probably the gentleman that you -- that you're looking for[.]'."

State v. Levell, No. CAAP-11-0000073, 2012 WL 456490, at *1 (Haw. App. 2012).

### IV.

On May 1, 2012, Petitioner filed an application for writ of certiorari (Application), in which he listed the following questions:

> 1)  Whether the ICA gravely erred in holding that the district court did not abuse its discretion in prohibiting [Petitioner] from raising the complainant's alleged theft of his credit cards after the alleged harassment occurred.
>
> 2)  Whether the ICA gravely erred in holding that even if

10

> the district court erred, <u>the error was harmless</u> because [Petitioner's] own testimony provided substantial evidence in addition to complainant's testimony to support his conviction.

(Emphases added.)

Respondent did not file a Response to the Application.

V.

In his Application, Petitioner argues that the court's refusal to allow Petitioner to introduce evidence of Complainant's acts to show bias, interest, or motive violated his right to confrontation guaranteed by the sixth amendment to the United States Constitution[8] and article I, section 14 of the Hawai'i Constitution. Petitioner contends that the court should have allowed him to introduce evidence relevant to Complainant's credibility and her bias, interest, and motive to fabricate her claims pursuant to HRE Rules 404(b) and 609.1.[9] Petitioner cites to <u>State v. Balisbisana</u>, 83 Hawai'i 109, 115, 924 P2d 1215, 1221 (1996), and <u>State v. Marcos</u>, 106 Hawai'i 116, 121, 102 P.3d 360, 365 (2004).

---

[8] U.S Const. amend. XI provides in relevant part:

In all criminal prosecutions, the accused shall enjoy the right to . . . be confronted with the witnesses against him[.]

[9] HRE Rule 609.1 provides:

(a) General rule. The credibility of a witness may be attacked by evidence of bias, interest, or motive.

(b) Extrinsic evidence of bias, interest, or motive. Extrinsic evidence of a witness' bias, interest, or motive is not admissible unless, on cross-examination, the matter is brought to the attention of the witness and the witness is afforded an opportunity to explain or deny the matter.

In Balisbisana, the defendant appealed from his conviction of abuse of a family or household member, arguing that his right to confrontation was violated when the trial court excluded all references to the complaining witness's conviction for harassing the defendant. 83 Hawaiʻi at 112, 924 P.2d at 1218. This court explained that evidence of bias, interest, or motive may be excluded under HRE Rule 403 if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. Balisbisana, 83 Hawaiʻi at 114, 924 P.2d at 1220. However, the trial court's discretion becomes operative "only after the constitutionally required threshold level of inquiry has been afforded the defendant." Id. (emphasis added). Under the constitution, the confrontation clause protects "[a]n accused's right to demonstrate the bias or motive of prosecution witnesses[,]" and "'the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross examination.'" Balisbisana, 83 Hawaiʻi at 115, 924 P.2d at 1221 (quoting Delaware v. Van Arsdall, 475 U.S. 673, 678-79 (1986)). Thus, Balisbisana held that the trial court's prohibition of all inquiry into the complaining witness' conviction was an abuse of discretion because, in the absence of that evidence, the jury did

not have a sufficient basis from which to make an informed apprisal of the complaining witness's alleged bias and motive. Id. at 116, 924 P.2d at 1222.

In Marcos, this court considered whether the defendant's right to confrontation was violated when he was barred from cross-examining the complaining witness about whether "she had a motive to see that Petitioner was convicted in order to assist her in a pending family court case concerning custody of the minor child of Petitioner and the complainant." 106 Hawaiʻi at 117, 102 P.3d at 361. This court reaffirmed that the defense should be allowed to "'expose the fact from which the jurors could appropriately draw inferences relating to the complainant's motive or bias.'" Id. at 121, 102 P.3d at 365 (quoting Balisbisana, 83 Hawaiʻi at 115, 924 P.2d at 1221). The appropriate inquiry was "whether the jury had sufficient information from which to make an informed appraisal of [the complainant's] motives and bias, absent evidence of her conviction for harassing [the defendant].'" Id. (quoting Balisbisana, 83 Hawaiʻi at 116, 924 P.2d at 1222)). Since the defendant was prevented from cross-examining the complainant regarding her motive to lie, the Marcos court concluded that the defendant's right to confrontation was violated. Id. at 122, 102 P.2d at 366; see also Corella, 79 Hawaiʻi at 261-62, 900 P.2d at 1327-28 (disallowing cross-examination as to whether complaining

witness lied about her contact with the defendant because she feared jeopardizing her relationship with her boyfriend violated the defendant's right to confrontation).

VI.

A.

It is established in this jurisdiction that "[b]ias, interest, or motive is <u>always relevant</u> under HRE Rule 609.1." <u>Estrada</u>, 69 Haw. 204, 220, 738 P.2d 812, 823 (1987) (emphasis added). The degree to which evidence might tend to show possible bias, interest, or motive is not the determining factor with respect to admissibility of evidence under HRE Rule 609.1. Rather, the relevant inquiry is whether such evidence has "<u>any tendency</u> to support an inference of the witness' disposition or tendency, consciously or unconsciously, to slant testimony, one way of the other, from the straight and true." Addison M. Bowman, <u>Hawaiʻi Rules of Evidence Manual</u> (HRE Manual) § 609.1–[1][C] (2010-11 ed.) (emphasis added). Once evidence has been shown to be relevant to possible motive, interest, or bias, "it is error not to allow cross-examination to reveal possible bias." <u>Estrada</u>, 69 Haw. at 220, 738 P.2d at 823.

B.

In this case, the court prevented Petitioner from cross-examining Complainant about the alleged theft because it concluded that such testimony was not relevant and was outweighed

by the danger of unfair prejudice to Complainant.[10]  But the authorities cited above establish that evidence of witness bias is relevant, and that the trial court's discretion to exclude evidence under HRE Rule 403 only becomes operative after the threshold level of inquiry under the confrontation clause has been afforded.  See Balisbisana, 83 Hawai'i at 114, 924 P.2d at 1220; Estrada, 69 Haw. at 220, 738 P.2d at 823.  As noted, supra, the appropriate inquiry is whether the trier of fact had sufficient information from which to make an informed appraisal of the witness's motives and bias.  See Balisbisana, 83 Hawai'i at 116, 924 P.2d at 1222.

Respondent's case against Petitioner hinged on the court's willingness to believe Complainant's testimony over Petitioner's version of the events, and Petitioner's accusation againt Complainant may have given her a motive to slant the nature of her testimony against Petitioner.  Had Petitioner been allowed to ask, he might have succeeded in eliciting testimony from Complainant tending to show that she was biased or had a motive to fabricate or exaggerate a story about harassment and to testify falsely in court.  This, in turn, could have affected the

_____

[10]    When Petitioner initially sought to ask Complainant about the credit card incident, one of the reasons the court gave for not allowing the testimony was that Complainant "might violate her right to self incrimination."  However, although the court presumably would have advised Complainant of her right against self-incrimination (in fact, Respondent asked the court to advise Complainant of her rights), it is not clear whether Complainant would have refused to give answers.  In the absence of cross-examination, whether Complainant would have asserted the right against self-incrimination is entirely speculative.

court's view of Complainant's credibility, and might have led the court to conclude that Respondent had not proven its case. Without evidence of Complainant's potential bias or motive, the court did not have a sufficient basis from which to make an informed apprisal of Complainant's credibility. See Balisbisana, 83 Hawaiʻi at 116, 924 P.2d at 1222. As such, Petitioner's right to confrontation was violated when the court prevented him from cross-examining Complainant about the alleged credit card theft.

C.

Respondent nevertheless argues that the credit card incident had very little probative value because the incident occurred after Complainant accused Petitioner of harassment, and thus Complainant would not have had a motive to falsely accuse Petitioner of the prior incident of harassment. The record is not clear as to when the alleged theft of Petitioner's credit cards occurred. But even assuming that Complainant took the credit cards after she accused Petitioner of harassment, the alleged theft could still have furnished a motive for Complainant to slant or exaggerate her testimony at Petitioner's trial. Evidence about the theft could have been used to establish Complainant's motive to provide false testimony against Petitioner in retaliation for his seeking her arrest. As recounted, supra, the court might have had a significantly different impression of Complainant's credibility had Petitioner's counsel been permitted to pursue his proposed line

16

of cross-examination. Therefore, Petitioner should have been allowed to ask Complainant about the alleged theft.

D.

Respondent also contends that Petitioner's right to confrontation was not violated because the court had in its possession sufficient information to apprise the biases and motivations of Complainant. According to Respondent, Petitioner was given "considerable latitude" during cross-examination and was able to argue to the court that Complainant fabricated the harassment incident because she wanted to keep Petitioner's cell phone and stay in his apartment without paying rent. However, Petitioner's theory was also that Complainant had a reason to testify falsely or to slant her testimony against him because he had accused her of stealing his credit cards. The court was unable to consider this potential bias or motive in weighing the parties' testimony because Petitioner was not allowed to cross-examine Complainant as to the alleged theft. To reiterate, the relevant inquiry in deciding whether cross-examination should have been allowed was whether the evidence had any tendency to support an inference of the witness's disposition or tendency, consciously or unconsciously, to slant testimony, one way of the other, from the straight and true. HRE Manual § 609.1-[1][C]; see also Balisbisana, 83 Hawai'i at 114, 924 P.2d at 1220 (holding that the trial court has discretion to exclude evidence of a witness's bias or motive only after the constitutionally

17

required threshold level of inquiry has been afforded the defendant).  In this case, the court did not have in its possession sufficient information to apprise itself of the alleged bias and motivation of Complainant on what Petitioner indicated was the source of such a bias or motivation--the alleged credit card theft.  Thus, the court erred in precluding cross-examination into the credit card incident.

                              VII.

          Finally, Respondent maintains that any error by the court was harmless beyond a reasonable doubt "due to the extent of cross-examination otherwise permitted, the extremely limited value of the proposed cross-examination, and the overall strength of the prosecution's case, including [Petitioner's] admission that he approached the police and told them without any prompting 'I'm probably the gentleman . . . that you're looking for[,]' despite his claim that no altercation had occurred.  The ICA similarly concluded that any error by the court in barring cross-examination was harmless because Petitioner's "own testimony provided substantial evidence . . . to support his conviction[,] since he testified that he told the police officers that "'I'm probably the gentleman that you -- that you're looking for[.]'" Levell, 2012 WL 456490, at *1.

          The "[d]enial of a defendant's constitutionally protected opportunity to impeach a witness for bias, motive or interest is subject to harmless error analysis."  Balisbisana, 83

                              18

Hawai'i at 117, 924 P.2d at 1223.  A defendant's conviction will not be overturned if a court commits an error that is harmless beyond a reasonable doubt.  State v. Veikoso, 125 Hawai'i 126, 135, 270 P.3d 997, 1006 (2011).  However, an error is not harmless "if there is a reasonable possibility that [the] error might have contributed to the conviction."  Id.; see also Corella, 79 Hawai'i at 261, 90 0 P.2d at 1328 (Conceivably, there is "a reasonable possibility that the error might have contributed to the conviction.").  In reviewing whether an error was harmless, this court examines the entire record.  "[A] host of factors" may be considered, including "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case."  Id. (quoting Olden v. Kentucky, 488 U.S. 227 (1988)).

In this case, Complainant's testimony was central to Respondent's case.  The allegations of credit card theft were not cumulative to any testimony introduced at trial.  There was also no other evidence to directly corroborate Complainant's testimony, and therefore evidence of Complainant's bias or motive to lie would have been particularly helpful in assessing Complainant's credibility.  While the court allowed cross-

examination as to Complainant's other potential motives to fabricate an allegation of abuse--keeping Petitioner's cellphone and remaining in Petitioner's apartment without paying rent--it did not permit any cross-examination with respect to the theft allegation. Retaliation for an accusation of theft would seem to furnish Complainant with a motive to testify falsely or to exaggerate, especially since Complainant gave testimony that she only returned to Petitioner's apartment once with the police to recover her belongings.

Finally, Respondent argues that Petitioner basically admitted guilt to the police when he told the police that he was the man they were looking for. But, taken in context, Petitioner's statement was not an admission of guilt. Petitioner's testimony was that he told the police, "I'm probably the gentleman that you -- that you're looking for, 'cause I was trying to find out what -- you know, <u>what the problem is, what's going on, what -- what they were called for</u>." (Emphasis added.) Complainant testified that she told Petitioner that she was going to call the police before she left the apartment. Petitioner testified that Complainant called the police before she left the apartment. It cannot be disputed as a matter of fact, then, that Petitioner knew that the police were being called. It is therefore not surprising that, when Petitioner saw Complainant talking to a police officer, Petitioner would approach the officer and introduce himself. Thus, the court and the ICA erred

in concluding that Petitioner's statement was an admission of guilt and that Petitioner would not have known that the police could be coming at Complainant's request.  Considering the circumstances of Respondent's case, the error was not harmless.

Respondent's case was essentially dependent on the credibility of Complainant, its only witness.  The court decided the case on the basis of finding "the [Complainant] . . . more credible than . . . [Petitioner]."  However, the court might have had a different impression of Complainant's credibility if Petitioner had been allowed to cross-examine her as to the alleged theft.  There is a reasonable possibility then that the court's error might have contributed to Petitioner's conviction, and thus the court's error was not harmless.

VI.

Accordingly, we vacate the March 2, 2012 judgment of the ICA affirming the court's January 12, 2011 Judgment, and remand to the court for proceedings consistent with this opinion.

Audrey E. Stanley,
Trisha Y. Nakamura,
and James S. Tabe,
for petitioner

Stephen K. Tsushima,
for respondent

/s/ Mark E. Recktenwald

/s/ Paula A. Nakayama

/s/ Simeon R. Acoba, Jr.

/s/ Sabrina S. McKenna

/s/ Jeannette H. Castagnetti

