**Electronically Filed**
**Supreme Court**
**SCWC-15-0000354**
**25-JUL-2019**
**07:57 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

_____

STATE OF HAWAI'I,
Respondent/Plaintiff-Appellee,

vs.

WALTER BROWN,
Petitioner/Defendant-Appellant.

_____

SCWC-15-0000354

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-15-0000354; CR. NO. 13-1-1006)

JULY 25, 2019

McKENNA, POLLACK, AND WILSON, JJ., WITH NAKAYAMA, J.,
DISSENTING, WITH WHOM RECKTENWALD, C.J., JOINS

OPINION OF THE COURT BY WILSON, J.

Petitioner/Defendant-Appellant Walter Brown ("Brown")
appeals his assault conviction on the grounds that his
constitutional right to confront an adverse witness was
violated. A jury found Brown guilty of one count of assault in
the second degree under Hawai'i Revised Statutes ("HRS") § 707-
711(1)(a) (2014); he was sentenced to a term of probation of

four years with special terms and conditions. The Intermediate Court of Appeals ("ICA") affirmed the Circuit Court of the First Circuit's ("circuit court") judgment and sentence. Brown contends that his constitutional right to confrontation was violated when the circuit court refused to allow cross-examination of the complaining witness on two topics relevant to her bias, interest, or motive for testifying against him. Specifically, Brown argues he should have been permitted to cross-examine the complaining witness regarding her pending misdemeanor assault charge arising from the same incident for which he was charged, and her probation status resulting from a separate assault charge.

Under the constitutions of the United States and the State of Hawai'i, the right to confront witnesses is fundamental to a fair trial. U.S. Const. amend. VI; Haw. Const. art. I, § 14. When a trial court errs by violating that right, a conviction obtained at trial will be upheld only if the error was harmless beyond a reasonable doubt. In this case, Respondent/Plaintiff-Appellee State of Hawai'i ("the State") concedes that Brown's constitutional right was violated, but contends the error was harmless beyond a reasonable doubt. Because the error deprived the jury of information about the complaining witness, the exclusion of which might have contributed to its decision to convict, see State v. Acacio, 140

Hawaiʻi 92, 98, 398 P.3d 681, 687 (2017), the violation of Brown's right to confrontation was not harmless beyond a reasonable doubt.

## I. BACKGROUND

Brown was charged with one count of assault in the second degree and one count of assault in the third degree as a result of a fight at a restaurant in Honolulu on February 20, 2013, at around 1:30 p.m. The fight involved Brown, his pregnant wife ("Wife"), and his two daughters from a previous relationship, one of whom is the complaining witness ("CW") and the other of whom is CW's sister ("Sister"). CW and Sister were at the restaurant to meet their mother ("Mother"). The facts are disputed. CW and Sister provided testimony which portrayed Brown as the initial aggressor. Brown and Wife testified that Brown acted in self defense and did not initiate the altercation.

## A. State's Motion in Limine and Defense's Notice of Intent Regarding Prior Bad Acts of CW

Prior to trial, the State filed a motion in limine to exclude any prior bad acts of its witnesses. In its motion, the State sought an order compelling Brown to disclose "the date, location and general nature of any prior bad acts of any of the State's witnesses, if any, that the Defendant intends to introduce or refer to during cross-examination of any State's

witness or during the direct examination of any defense witness" and excluding or limiting such evidence under Hawai'i Rules of Evidence ("HRE") Rules 401, 402, and 403.

Brown similarly filed a pretrial notice of intent to introduce evidence of the following five incidents or facts relating to CW, members of the public, and members of her family: (1) in 2013, CW was charged with harassment stemming from an incident in which she allegedly threw a soda can into a driveway where people had gathered for a birthday party while yelling insults; (2) in 2010, CW was charged with terroristic threatening in the second degree for an incident in which she allegedly threatened to kill Mother, to which CW later pleaded no contest to an amended charge of harassment; (3) on February 20, 2013, CW was arrested and charged with assault in the third degree against Wife and assault in the third degree against Brown for conduct arising out of the incident at the restaurant; (4) in 2013, CW was arrested and charged with abuse of family or household members arising from an incident in which she allegedly struck her daughter in the face, to which she later pleaded guilty to a charge of assault in the third degree; and (5) CW was under misdemeanor probation supervision as a result of her plea to the assault in the third degree charge arising from the assault of her daughter.

At the pretrial hearing to address the State's motion in limine and Brown's notice of intent,[1] the circuit court denied Brown's motions to admit evidence of the two assault charges arising out of the incident at the restaurant and to admit evidence that CW was on probation.  However, the circuit court granted Brown's motions to introduce evidence of the three past incidents of violence,[2] but with a limitation that defense counsel could admit evidence of only two of the three incidents, as introducing evidence of all three would be more prejudicial than probative.

In denying Brown's motion to admit the evidence of the charges against CW arising out of the incident at the restaurant, the circuit court stated that the arrest at the restaurant was "irrelevant to whether or not the State can make its burden of proof as to the material elements as to the defendant.  And so I think that interjecting the fact that the complaining witnesses were arrested confuses the jury and misleads them in an unfair way."  As to the evidence that CW was on probation for the 2013 assault, the circuit court said that it had "no probative value whatsoever."

---

[1]     The Honorable Edward H. Kubo, Jr. presided.

[2]     That is, the court allowed introduction of evidence relating to the 2013 harassment charge, the 2010 harassment conviction, and the 2013 third degree assault conviction.

During the first day of trial, defense counsel renewed the motion to present evidence that, as a result of the fight at the restaurant, CW was arrested and charged with assaulting Brown and Wife:

> [The defense: ]To not be able to do that presumes or gives the jury -- jury does not get the complete story because the incident and the circumstances of the case arise out of the same facts and circumstances. I believe it's important for our defense and as well as the jurors to know that even though Mr. Brown sits here as the accused, there is [sic] cross-complaints.
>
> For example, if we were to use the defense of mutual affray, your Honor, it's a stronger defense if you were to show that she too was charged by the police, your Honor, and she too was arrested, your Honor.[3] And so we believe that by not allowing us to go into that, to delve into that area, your Honor, restricts the defenses that we may be able to assert in this case.

The circuit court denied the request on the grounds that CW's culpability arising from her actions during the incident was irrelevant:

> [The Court: ]This trial deals with the guilt or innocence of Mr. Walter Brown. The jury will be advised that they are to consider this evidence as to him and no one else. To bring in any outside information of another being arrested raises a presumption of guilt of that other person which is not being tried in this case at this time. That's for another court to decide. What is sufficient is the guilt or innocence of the defendant based on the evidence and this indictment and two counts, and so this Court will deny the defense's request to bring in evidence of anyone else's arrest because that's neither here nor there, nor is it the purview of the jury to decide the guilt or innocence of anyone else.

During the second day of the trial, counsel for the defense again renewed its position that the defense should be

___

[3] At trial, the jury was instructed about mutual consent as a defense to assault in the third degree.

allowed to question CW regarding the fact that she was charged with assaulting Brown and Wife. Defense counsel argued that the evidence "goes to bias, motive, and interest . . . with respect to her testimony." Defense counsel also noted his understanding that the prosecutors had dismissed the case against CW for assaulting Brown two days earlier.[4] The court denied the request to reconsider its ruling after expressing concern about creating a "mini trial[] within a trial."

**B.  Trial, Conviction, Sentence, and New Trial Motion**

At trial, CW testified that she and Sister planned to meet Mother at the restaurant. CW testified that she and Sister saw Brown and Wife as they entered, and that he came toward them, grabbed them, and pushed them out of the restaurant's entrance, causing CW to fall. A fight ensued, during which CW said Brown punched, kicked, stepped on, and shook her and Sister, and she pushed, kicked, and punched Brown in defense of herself and Sister. At one point, CW testified, Brown punched her underneath the left jaw area. She denied punching Wife during the altercation. Sister also testified that Brown

---

[4]  According to Brown's notice of intent, CW was charged with two counts of assault in the third degree for assaulting Brown and Wife shortly after the melee at the restaurant that forms the basis of the present case. According to defense counsel, the State dismissed CW's charge for assault in the third degree against Brown the day before the start of Brown's trial, leaving her with one outstanding charge of assault in the third degree at the time she testified.

grabbed her and CW as they entered the restaurant, that he punched CW in the jaw and slammed Sister onto the ground in the ensuing fight, and that she and CW hit Brown in self-defense.

Pursuant to the court's pre-trial order, CW was questioned about two prior incidents of misconduct.  She admitted to pleading guilty to third degree assault in the 2013 case involving her daughter, and to pleading guilty to harassment in the 2010 case involving the threats against Mother, although she denied threatening to kill her.  She was also questioned about an entry she made on Mother's Facebook page regarding Wife and the February 20, 2013 fight in which she said "bahahahaha fckn silly girl gave birth.  Now let's see who will laugh.  Talk shit, get hit.  I ain't sca[r]e[d]. . . . Let's do it again, me and you round two.  Oh wait, round one wasn't finished."

Brown gave a different account of the events with regard to who was the initial aggressor and whether he was the cause of CW's jaw injury.  Brown testified that as his family was leaving the restaurant, he saw CW and Sister near the door. He saw that they were angry, and he tried to block them from entering the restaurant and to push them backwards out the door. He testified that CW slipped and fell numerous times, and that the first time she fell, she hit her head on a table outside the restaurant.  At one point, Wife told him CW had hit her.  He

8

moved closer to Wife to protect her. He testified that CW and Sister punched and scratched him, but he denied ever punching, choking, slamming to the ground, or stomping on CW or Sister. Wife testified that she first saw CW and Sister at the door of the restaurant, punching and scratching Brown. She testified that CW punched her in the face, and that at some point after CW punched her, CW slipped and fell forward, hitting her head on a table. Wife testified that Brown tried to hold back his daughters, but that at no point during the incident did he choke, pick up and slam to the ground, stomp on, or punch them.

Two eyewitnesses and a physician that treated CW after the incident also testified. The security guard who was working at a building directly behind the restaurant testified that he saw Brown hit CW on the left side of her jaw. The security guard was about 65 to 70 feet away at the time of the hit. He testified that he did not see CW attack Brown in any way. The second witness, the manager of the restaurant, testified that around 1:30 p.m., "all of a sudden there was this big commotion" in the restaurant, "and everybody started running outside[,]" so he followed them out and saw Brown attacking CW. He testified that he saw Brown punch CW "in the chin." Both the security guard and the manager testified that they did not see the initial phase of the encounter between Brown and CW.

An emergency room physician testified that she treated CW shortly after the incident at the restaurant. She testified that she conducted multiple CT scans and concluded that CW had suffered a jawbone fracture, somewhere roughly in the left jaw area. CW also had some loose teeth around the jawbone fracture and some scrapes and swelling to her face. The physician did not testify as to a possible cause of the fracture.

At the end of the State's case, the court granted Brown's motion for acquittal on the second count of assault in the third degree. The court found that Sister's testimony was insufficient to prove a prima facie case of third-degree assault against her. The jury found Brown guilty on the first count of assault in the second degree; he was sentenced to four years probation.

Brown moved for a new trial on the basis of alleged perjured testimony by Mother. During a hearing on the new trial motion, defense counsel raised the exclusion of the criminal charges against CW and her probation status as an additional reason to grant a new trial. The circuit court denied the motion.

**C. Appeal**

Brown appealed the judgment of conviction to the ICA on the basis that the circuit court's refusal to admit the evidence of CW's pending charges and probation status violated

his constitutional right to confront the witnesses against him, and that the court's constitutional error was not harmless beyond a reasonable doubt.

The ICA affirmed Brown's conviction. State v. Brown, No. CAAP-15-0000354, 2017 WL 2829280, at *9 (App. June 30, 2017) (mem.). The ICA held that even if the exclusion of the evidence of the charges against CW and her probation status was improper, the error was harmless. Id. at *8. It held that sufficient evidence was presented at trial for the jury to assess CW's credibility, and that she had been subject to "extensive cross-examination . . . on subjects including who was the first aggressor, CW's previous convictions for harassment and assault against family members, and her relationship with Brown." Id. at *9. Although the ICA recognized that CW's testimony was important to the prosecution's case, and that there was no other way for the jury to know she had been charged or was on probation at the time of trial, it nonetheless held that "[t]he testimony of three witnesses other than CW to the assault against her as well as the physician establishing the extent of her injuries amounted to a very strong, if not overwhelming, case." Id.

Chief Judge Nakamura dissented. Id. (Nakamura, C.J., dissenting). He concluded that the pending charge against CW at the time of her testimony and the fact that she was on probation

11

"created a potential interest, motive, and bias for the CW to testify falsely that was different in nature and character than revealed by the other evidence permitted by the Circuit Court." Id. He identified that interest as "her own self-interest in avoiding criminal punishment[.]" Id. He further reasoned that "[t]he evidence excluded by the Circuit Court was the only viable means for Brown to impeach the CW with her interest, motive, and bias to shape her testimony to avoid her own criminal punishment." Id. Because the disinterested witnesses to the assault did not observe the entire interaction between Brown and CW, Chief Judge Nakamura was unable to conclude that the decision to exclude the contested evidence was harmless beyond a reasonable doubt. Id. at *10.

Brown filed an application for a writ of certiorari, contending that the ICA erred in concluding that his right to confrontation was not violated by the circuit court's exclusion of the evidence about CW.

## II. STANDARD OF REVIEW

A trial court's ruling on the question of whether "proffered evidence is probative of bias, interest or motive is reviewed under the right/wrong standard." Acacio, 140 Hawaiʻi at 98, 398 P.3d at 687 (quoting State v. Balisbisana, 83 Hawaiʻi 109, 114, 924 P.2d 1215, 1220 (1996)).

### III.  DISCUSSION

**A.  The trial court violated Brown's right to confrontation by barring cross-examination as to CW's pending charges arising from the same incident, as well as to her supervised probation status resulting from an earlier assault conviction.**

Article I, section 14 of the Hawai'i Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against the accused[.]"  See also U.S. Const. amend. VI; Davis v. Alaska, 415 U.S. 308, 316-317 (1974) ("[T]he exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination.").  "[T]he right to confront a witness is not satisfied simply by any cross-examination, but instead, . . . the cross-examination must be sufficient and meaningful."  State v. Nofoa, 135 Hawai'i 220, 231, 349 P.3d 327, 338 (2015) (emphases in original).  The defendant's right to sufficient and meaningful cross-examination includes the opportunity to show that a witness is unreliable due to bias.

> [A] criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby "to expose to the jury the facts from which jurors . . . could appropriately draw inferences relating to the reliability of the witness."

Delaware v. Van Arsdall, 475 U.S. 673, 680 (1986) (quoting Davis, 415 U.S. at 318).  "The credibility of a witness may be attacked by evidence of bias, interest, or motive[,]" HRE Rule

13

609.1(a), and such evidence "is relevant if it has '<u>any tendency</u> to support an inference of the witness' disposition or tendency, consciously or unconsciously, to slant testimony one way or the other, from the straight and true.'" <u>State v. Acker</u>, 133 Hawai'i 253, 299, 327 P.3d 931, 977 (2014) (emphasis in original) (quoting <u>State v. Levell</u>, 128 Hawai'i 34, 40, 282 P.3d 576, 582 (2012)).

Defense counsel was forbidden by the court's order from questioning CW on the charges against her arising from the same incident and the court precluded the defense from introducing evidence that she was on probation for the charge of assault in the third degree. Both matters were relevant to her bias or motive. "[G]iving a defendant 'considerable latitude' during cross-examination of the complaining witness is not sufficient if the defendant is deprived of an opportunity to present evidence about the source of the complaining witness's potential bias or motive." <u>Acacio</u>, 140 Hawai'i at 101, 398 P.3d at 690 (quoting <u>Levell</u>, 128 Hawai'i at 41, 282 P.3d at 583).

Exclusion of the criminal charges against CW and the fact that CW was on probation deprived the jury of evidence that she had an interest to shape her testimony against Brown to avoid punishment and to prevent the possible revocation of her probation. The jury thus lacked "sufficient information from which to make an informed appraisal of the complainant's motives

and bias" as to her testimony. Levell, 128 Hawai'i at 40, 282 P.3d at 582 (brackets omitted) (quoting State v. Marcos, 106 Hawai'i 116, 121, 102 P.3d 360, 365 (2004)). In short, Brown was not afforded the cross-examination to which he was constitutionally entitled to confront CW about her motives or bias favoring the prosecution.[5]

Thus, the circuit court erred when it concluded that evidence that CW was arrested and charged with crimes related to the same incident was irrelevant, confusing, and misleading; similarly, the conclusion that evidence of CW's probation had "no probative value whatsoever" was error.

## B. The trial court's violation of Brown's right to confrontation was not harmless beyond a reasonable doubt.

Having held that Brown's constitutional right was violated, we next determine whether the constitutional error was harmless beyond a reasonable doubt. In his opening brief, Brown argued that the error was not harmless because, "except for the testimonies of [Brown] and [Wife], there was no other evidence

---

[5]     We note that the State conceded at oral argument that "cross-examination on CW's probation status, and her charges -- assault charges stemming from this incident should have been allowed. Not doing so was error." Oral Argument, State v. Brown (SCWC-15-0000354) at 28:11-28:23, http://oaoa.hawaii.gov/jud/oa/18/SCOA_020718_SCWC_15_354.mp3. However, the State contended that this error was harmless because there was "independent evidence to establish the elements of the offense in this case." Oral Argument at 28:27-28:32.

with which to impeach [CW's] testimony" regarding the cause of her jawbone fracture.

A trial court's denial of a defendant's constitutional right to impeach a witness for bias, motive, or interest is subject to the harmless beyond a reasonable doubt standard. Acacio, 140 Hawai'i at 98, 398 P.3d at 687. This standard is applied by "examin[ing] the record and determin[ing] whether there is a reasonable possibility that the error complained of might have contributed to the conviction." Id. Factors determinative of whether a violation of the constitutional right to impeach might have contributed to the conviction include: "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." Levell, 128 Hawai'i at 42, 282 P.3d at 584 (quoting Balisbisana, 83 Hawai'i at 117, 924 P.2d at 1223).

Here, there is a reasonable possibility that the circuit court's constitutional error might have contributed to Brown's conviction. As an eyewitness to the entire event and the complaining witness in the case, CW was the most important witness for the prosecution. She gave a firsthand account of

16

the entire incident, testifying about specific acts that met the elements of assault. Brown was not permitted to cross-examine CW about the criminal charges she faced and her probation status that placed CW in immediate legal jeopardy and possibly gave the State leverage over her testimony. Were she convicted of the third degree assault charge against Wife and had her probation from her previous third degree assault charge been revoked, CW could have been sentenced to up to two years in prison. See HRS §§ 707-712(2), 706-663, 706-625(3), (5) (2014). On the other hand, CW may have believed that providing testimony at trial that Brown was the first aggressor would lessen the likelihood the prosecution would pursue the pending charge against her.[6] Impeachment of such an important witness might have affected the jury's decision as to whether to credit Brown's assertion of self-defense. Thus, notwithstanding the evidence submitted by the State, it cannot be concluded beyond a reasonable doubt that the circuit court's erroneous decision to preclude Brown from impeaching CW for bias, interest, or motive did not contribute to Brown's conviction. The error was not harmless.

The Dissent concludes that the constitutional error was rendered harmless beyond a reasonable doubt by the corroborative testimony of the two eyewitnesses and the

---

[6] Per defense counsel, one of the charges against CW had already been dismissed shortly before the Brown's trial.

17

defense's "otherwise extensive cross-examination of CW[.]" Dissent at 11.  Its analysis is similar to that of the ICA, which found that the State presented "a very strong, if not overwhelming, case" that Brown committed assault.  Brown, 2017 WL 2829280, at *9.  However, the ultimate question is whether the erroneous exclusion of additional evidence could have reasonably affected the jury's verdict.

The two eyewitnesses testified that they did not witness the entire interaction between Brown and CW.[7]  The security guard testified that he was 65 to 70 feet away from the fight, and the manager testified that the scene was a "big commotion" and that he ran back inside at one point to call the police.  In contrast, Brown and Wife offered testimony that directly contradicted CW's explanation of the cause of injury, contending that she slipped and hit her head on a table. Evidence that cast doubt on CW's credibility may have affected the jury's conclusion as to her description of the events.  The jury was deprived of strongly probative evidence relating to its choice between the conflicting accounts of how CW's injury was caused.  While CW was cross-examined about her relationship with

_____

[7]     The Dissent notes that the security guard testified that he observed "the events immediately preceding the punch" and that CW had not attacked Brown.  Dissent at 16 n.2.  However, the security guard did not witness the part of the fight during which, according to Brown's account, CW slipped and hit her head on a table.

Brown and Wife and her propensity for violence, the court prevented the defense from eliciting evidence about her interest in avoiding future criminal prosecution and punishment. Nothing in CW's testimony indicated that the State had leverage over her in the form of pending charges or the ability to revoke her probation. And as the Dissent recognizes, "no other witness testified as to CW's misdemeanor probation status or that she had also been charged with assault stemming from the same incident." Dissent at 11. Thus, no other evidence conveyed the degree of CW's possible interest in slanting or falsifying her testimony to gain favor with the prosecution and to avoid immediate legal jeopardy, and accordingly "the jury did not have sufficient information from which to make an informed appraisal of the CW's motive." Acacio, 140 Hawai'i at 101, 398 P.3d at 690. Notwithstanding the State's evidence against Brown, the conclusion cannot be reached beyond a reasonable doubt that the unconstitutional exclusion of evidence about CW's "significant incentive to curry favor with the State[,]" Birano v. State, 143 Hawai'i 163, 192, 426 P.3d 387, 416 (2018), did not contribute to the jury's decision to convict.

## IV. CONCLUSION

For the foregoing reasons, we vacate the July 31, 2017 judgment of the ICA and the March 25, 2015 Judgment of Conviction and Probation Sentence of the Circuit Court of the

19

First Circuit, and remand this case to the circuit court for proceedings consistent herewith.

| | |
|---|---|
| Jacquelyn T. Esser<br>(William H. Jameson, Jr.<br>on the brief<br>and application)<br>for Petitioner | /s/ Sabrina S. McKenna<br><br>/s/ Richard W. Pollack<br><br>/s/ Michael D. Wilson |



Sonja P. McCullen
for Respondent