**NOT FOR PUBLICATION IN WEST'S HAWAII REPORTS OR THE PACIFIC REPORTER**

**Electronically Filed
Intermediate Court of Appeals
CAAP-19-0000490
31-AUG-2020
09:12 AM**

NO. CAAP-19-0000490

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


STATE OF HAWAI'I, Plaintiff-Appellee, v.
BRIAN LEE SMITH, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(CASE NO. 3CPC-18-0000543)


MEMORANDUM OPINION
(By: Ginoza, C.J., and Chan and Wadsworth, JJ.)

Defendant-Appellant Brian Lee Smith (**Smith**) appeals from the Judgment of Conviction and Sentence (**Judgment**), entered on June 26, 2019, in the Circuit Court of the Third Circuit (**Circuit Court**).[1] After a jury trial, Smith was convicted of: (1) Murder in the Second Degree, in violation of Hawaii Revised Statutes (**HRS**) § 707-701.5(1) (2014)[2] (**Count 1**); (2) Reckless Endangering in the First Degree, in violation of HRS § 707-713(1)

---

[1] The Honorable Melvin H. Fujino presided.

[2] HRS § 707-701.5 provides, in relevant part:

(1) Except as provided in section 707-701, a person commits the offense of murder in the second degree if the person intentionally or knowingly causes the death of another person . . . .

(2) Murder in the second degree is a felony for which the defendant shall be sentenced to imprisonment as provided in section 706-656.

(2014)[3/] (**Count 2**); (3) Ownership or Possession Prohibited (operable firearm), in violation of HRS § 134-7(b) and (h) (2011)[4/] (**Count 4**); (4) Ownership or Possession Prohibited (ammunition), in violation of HRS § 134-7(b) and (h) (**Count 5**); and (5) Carrying or Use of Firearm in the Commission of a Separate Felony, in violation of HRS § 134-21(a) (2011)[5/] (**Count**

---

[3/]    HRS § 707-713 provides:

    (1) A person commits the offense of reckless endangering in the first degree if the person employs widely dangerous means in a manner which recklessly places another person in danger of death or serious bodily injury or intentionally fires a firearm in a manner which recklessly places another person in danger of death or serious bodily injury.

    (2) Reckless endangering in the first degree is a class C felony.

[4/]    HRS § 134-7 provides, in relevant part:

    (b) No person who is under indictment for, or has waived indictment for, or has been bound over to the circuit court for, or has been convicted in this State or elsewhere of having committed a felony, or any crime of violence, or an illegal sale of any drug shall own, possess, or control any firearm or ammunition therefor.

        . . . .

    (h) Any person violating subsection . . . (b) shall be guilty of a class C felony; provided that any felon violating subsection (b) shall be guilty of a class B felony.

[5/]    HRS § 134-21(a) provides:

    (a) It shall be unlawful for a person to knowingly carry on the person or have within the person's immediate control or intentionally use or threaten to use a firearm while engaged in the commission of a separate felony, whether the firearm was loaded or not, and whether operable or not; provided that a person shall not be prosecuted under this subsection when the separate felony is:

        (1)    A felony offense otherwise defined by this chapter;

        (2)    The felony offense of reckless endangering in the first degree under section 707-713;

        (3)    The felony offense of terroristic threatening in the first degree under section 707-716(1)(a), 707-716(1)(b), or 707-716(1)(e); or

        (4)    The felony offenses of criminal property damage in the first degree under section 708-820 or criminal property damage in the second degree under section 708-821 and

(continued...)

2

6).  The convictions stemmed from an incident on June 23, 2018, in which Smith shot and killed Thomas Ballesteros, Jr. (**Ballesteros**), and shot and injured Nikolaus Jason Slavik (**Slavik**), the complaining witness and the only eyewitness (other than Smith) to the incident.[6]

On appeal, Smith contends that the Circuit Court erred in:  (1) prohibiting defense counsel from cross-examining Slavik about his unrelated arrest on June 20, 2018, his pending felony charges pertaining to that arrest, and his bail status on June 23, 2018; (2) preventing defense counsel from calling Tina Arakaki (**Arakaki**) as a witness during Smith's case-in-chief to establish that Slavik and Arakaki conspired together to hide evidence in order to protect Slavik; (3) preventing defense counsel from eliciting the hearsay statement of Thomas Spruance (**Spruance**) that neither he nor his wife gave Ballesteros or Slavik permission to pick any fruit from trees on their property; and (4) admitting Hawaiʻi County Police Department Detective Donovan Kohara's (**Detective Kohara**) testimony that Smith stated that he had smoked methamphetamine earlier that day prior to the shooting.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, as well as the relevant statutory and case law, we resolve Smith's contentions as follows.

## I.  BACKGROUND

### A.    June 23, 2018 Incident

At trial, Slavik testified in part as follows:  On

---

[5] (...continued)
>                the firearm is the instrument or means by
>                which the property damage is caused.

(Brackets omitted.)

[6]      Smith was sentenced as follows:  (1) on Count 1, life with the possibility of parole, with a mandatory minimum term of fifteen years of incarceration; (2) on Count 2, five years, with a mandatory minimum term of three years, consecutive to Count 1; (3) on Counts 4 and 5, ten years for each count, concurrent with Counts 1, 2, and 6; and (4) on Count 6, twenty years, concurrent with the other counts.

June 23, 2018, he and Ballesteros were picking fruit on the side of Painted Church Road in Kona, Hawaiʻi. While picking fruit, Slavik noticed a motorcycle drive past them four times. After the fourth pass, the driver, later identified as Smith, parked the motorcycle, took off his helmet and walked toward Slavik and Ballesteros. Ballesteros told Slavik that the driver of the motorcycle was "Brian." When Smith was about ten feet in front of his bike, he called out to Ballesteros, "Where's my stuff?" Ballesteros yelled back at Smith, "I left it at your house." After they exchanged a few more words, Ballesteros dropped his picker pole and began to walk toward Smith, hands down. Slavik assumed the two were going to exchange words and argue and fight, and then noticed Smith pull a gun from behind his back. Slavik stated: "By that time he was close enough to us[,] trigger was pulled, uh, point blank [Ballesteros's] temple and he died instantly. . . . I saw [Smith] pull the trigger point blank and execute my friend."

Slavik further testified: Smith began to walk away, then turned around and, with his arm extended, pointed the gun at Slavik, who was about six inches back. Smith said, "Am I gonna have a problem with you?" Slavik responded, "Yeah we're gonna have a problem. You just killed my friend." While facing Smith, Slavik started stepping backwards and moving toward the street. Smith followed Slavik's movement, and the two were arguing with each other. Slavik "saw [Smith's] finger move on the trigger and [Slavik] lunged, and [they] started wrestling over the gun." During the struggle, Slavik sustained gun shot wounds to his left hand, right forearm and right cheek, with Smith pulling the trigger each time. As Slavik forced the gun down, Smith fired another shot that hit Smith's left thigh. After Smith was shot, he let go of the gun and Slavik gained control of it. Slavik then grabbed the gun and used it to hit Smith several times on the back of the head. After Smith stopped fighting, Slavik threw the gun in the bushes "so it'd be out of [Smith's] reach."

At trial, Smith claimed that he acted in self-defense and did not intend to kill Ballesteros. Smith testified in part to the following: On June 22, 2018, the day before the incident,

he learned that Ballesteros had kicked in the door of his apartment.  Smith told his roommate, Leslie Mosier (**Mosier**), to call the police.[7]  The next morning, right after Smith left his house and was driving to work, Ballesteros jumped out from behind a fruit stand and threw a rock that hit Smith's motorcycle and helmet.  Smith finished his first job and arrived home from work between 2:30 and 3:00 p.m.  He saw a truck blocking the driveway and Ballesteros climbing his neighbor's fence.  Smith drove on and returned about 20 minutes later.  He saw that Ballesteros was still there and was with someone else, whom he later learned was Slavik.  Ballesteros was standing next to his neighbor's fence.  Smith turned his motorcycle around, parked, and walked down to his toolshed to grab his backpack.  The backpack, which Smith described as a "hunting backpack for shootin' pigs on the farm[,]" contained a gun.  After grabbing his backpack, Smith started walking up the center of the road toward Ballesteros.  He stopped, opened the backpack and took out his gun.  Smith said he took out the gun "'[c]ause there was two of those guys there and I know [Ballesteros] is an aggressive guy. . . . He's known to be violent . . . ."  Smith walked over to Ballesteros and started yelling, "You shouldn't be here.  Get outta here," and Ballesteros yelled "Ef you."  Smith also said, "Why you gotta break into my house and beat up my roommate?"  And Ballesteros said, "That's not all I'm gonna do," and he threw down his picking pole and charged Smith.  Smith testified that he felt

---

[7]     Mosier testified that on June 22, 2018, Ballesteros, who was her former boyfriend, came into Smith's apartment, physically abused her, and stole various items, including Smith's "gun that was on the back of the . . . bed that was just decoration."  Smith refers to the gun as a "replica gun" and the State refers to it as a "toy gun."

Slavik testified that two to three weeks after the shooting, he discovered the toy gun when he was at his auntie's (Arakaki) house, among belongings that were recovered from her truck, which Ballesteros and Slavik traveled in on June 23, 2018.  Slavik further testified that he left the toy gun outside of his auntie's house; he did not immediately tell the police about it, but the police eventually found it after he told them where to look.  On cross-examination, Slavik denied burying the toy gun under his auntie's porch, and denied telling the prosecutor's investigators that he had buried the gun.

Defense counsel called Kari Arguello, one of the prosecution's investigators, to impeach Slavik's testimony on the latter issue.  Arguello testified that during an interview on April 1, 2019, Slavik told her that he had buried the replica gun under his auntie's porch.

scared, and "held up the gun and fired a shot." He stated that he did not intend to fire the shot at Ballesteros – that "[he] tried to shoot over his head, but he was too close to me."

Smith testified that after he shot Ballesteros, "I see Nik Slavik coming at me." He pointed the gun at Slavik and told him to back up and walk away. Smith started to walk away, heard something, and turned back to see Slavik right behind him. Smith said he told Slavik, "What are you doing? Walk away[,]" and Slavik responded, "You just shot my friend and you pointed the gun at me." Smith said, "I'm sorry I pointed the gun at you. I don't know you. He was here to kill me and you're with him. Just walk away. Just walk away."

Smith testified that he began to walk away again, when Slavik hit him over the head with something, jumped on him, and put him in a headlock. According to Smith, Slavik "had his hands on my hands on the gun, and he twisted the gun around towards me and he squeezed my hand and the gun went off and the gun went off again and then he let go." Smith continued: "I tried to get my trigger out of the finger guard, and he grabbed my hand again and he shot me in the leg. [sic]" Smith testified that he never intended to shoot Slavik.

## B.  Slavik's Pending Criminal Charges and Bail Status

On December 14, 2018, Smith filed "Defendant's Second Notice of Intent under Rule 404(b) of the Hawaiʻi Rules of Evidence [(**HRE**)]." Smith gave notice that he intended to introduce evidence at trial concerning, among other things, Slavik's June 20, 2018 arrest for "possession of methamphetamine, drug paraphernalia, and a loaded firearm." Smith stated that he intended to introduce the evidence "to demonstrate the decedent's motive, knowledge, intent, opportunity, preparation, knowledge, plan under HRE Rule 404(b) and/or bias under HRE Rule 609.1."

On March 21, 2019, the State filed "State's Motion in Limine Number Two," which sought, among other things, an order barring testimony or other evidence relating to Slavik's June 20, 2018 arrest. In opposing the State's motion, Smith presented evidence that, after Slavik was arrested and charged in State v. Slavik, No. 3DCW-18-0001747, in the District Court of the Third

Circuit, he was placed on supervised release under an order not to engage in any criminal activity. Smith argued that he was seeking to admit at trial evidence of Slavik's arrest and bail status "to demonstrate that Slavik had a motive to lie about the events that occurred on June 23, 2019 [sic]," because "[he] knew that if he were implicated in any wrongdoing, his supervised release might be revoked, and he would be remanded to custody."[8]

On April 2, 2019, prior to the start of trial, the Circuit Court granted in part and denied in part the State's Motion in Limine Number Two, granting the motion to exclude evidence of Slavik's June 20, 2018 arrest,[9] as follows:

> [Regarding] the inciden[ts] on June 20th, 2018, . . . at this time the Court will grant the request to keep that

---

[8] We also take judicial notice, pursuant to HRE Rule 201, of the following:

(1) On July 16, 2018, in the District Court of the Third Circuit, the State filed a "Motion for Discharge as to All Counts" in State v. Slavik, No. 3DCW-18-0001747, "for the reason that this offense has been charged in the Information in the Circuit Court under Case No. 3CPC-18-0000548 on July 11, 2018." State v. Slavik, No. 3DCW-18-0001747, Judiciary Information Management System (**JIMS**) dkt. 13 at 1;

(2) On July 16, 2018, the District Court of the Third Circuit entered Judgment, discharging all counts in No. 3DCW-18-0001747. Slavik, No. 3DCW-18-0001747, JIMS dkt. 15 at 1-2;

(3) On July 11, 2018, the State filed an Information and Complaint in State v. Slavik, No. 3CPC-18-0000548, in the Circuit Court, charging Slavik with seven counts related to his June 20, 2018 arrest. State v. Slavik, No. 3CPC-18-0000548, JIMS dkt. 1 at 1-8;

(4) On January 3, 2019, following a jury trial, Slavik was found guilty as to four counts. Slavick, No. 3CPC-18-0000548, JIMS dkt. 169 at 1-2;

(5) On April 22, 2019, the Circuit Court entered a Judgment of Conviction and Sentence, convicting Slavik on four counts, and sentencing him to imprisonment. Slavick, No. 3CPC-18-0000548, JIMS dkt. 222 at 1-3.

[9] On April 22, 2019, the Circuit Court entered the written order granting in part and denying in part the State's Motion in Limine Number Two. As relevant here, the order stated:

> [Smith] may [e]licit testimony and evidence concerning Nikolaus Slavik's specific instances of conduct probative of untruthfulness under HRE rule 608, but may not [e]licit testimony or evidence relative to Nikolaus Slavik's . . . prior arrest and/or conviction for possession of methamphetamine, drug paraphernalia, or a firearm on June 20, 2018. The Court further finds that testimony or evidence relative to Nikolaus Slavik's prior arrest and/or conviction for possession of methamphetamine, drug paraphernalia, or a firearm on June 20, 2018 is more prejudicial than probative.

7

information out.  Unless you can show that the incident was somehow tied in to the present case. . . .

. . . .

But standing alone is what the Court has been informed regarding the prior incident, June 20th, as under [HRE Rule] 404, . . .; Court would not allow under 404.  Or in that the prejudicial effect is not outweighed by the probative.

At trial, on the day Slavik was to testify on behalf of the State, Smith again argued to the Court that Slavik's arrest and bail status at the time of the shooting gave him a motive to lie or to "slant his . . . statements to police[:]"

[DEFENSE COUNSEL]:  And, Your Honor, I just wanted to touch up on the 609.1.  So [Slavik] was arrested three days prior, and I think the Court had said I can't get into that under 404(b).  But the Court didn't rule on the 609.1 that he had a -- and I'm arguing that he had a motive to lie at the time or slant his, uh, statements to police, um, because --

THE COURT: The 60 --

[DEFENSE COUNSEL]: -- he's on bail status.

THE COURT: Your 609 would deal regarding interest or bias, but unless you can establish, uh, foundation as to relevance, et cetera, then the Court will make a ruling at that time.

During Smith's cross-examination of Slavik, defense counsel attempted to question him about the charges that were pending against him during the police investigation of the shooting:

Q.  (By [DEFENSE COUNSEL]):  Isn't it true, Mr. Slavik, that you hid that replica gun because at the time you believed had the police found it that you would come under suspicion for this incident?

A.    No, I would not.

Q.    And you hid that gun at the time because you believe -- because you were facing your own charges.  Is that correct?

[DEPUTY PROSECUTING ATTORNEY (**DPA**)]: Objection.

A.    No.

THE COURT:  Sustained.

[DPA]: Move to strike.

THE COURT: Stricken and not -- jury will disregard the last comment.

A bench conference ensued, as follows:

[DEFENSE COUNSEL]:  Your Honor, that he was out on

8

bail is directly relevant to his interest or motive.

> THE COURT: All right. Where he pulled on that, made the motions in limine, and the Court's order was that you were not gonna bring this up unless you can establish other types of foundation so I don't see that right now.

## II. DISCUSSION

Smith first asserts that the Circuit Court erred in precluding the defense from cross-examining Slavik regarding his arrest, pending felony charges, and bail status on June 23, 2018 in an unrelated case, for purposes of showing bias, interest, and motive to testify falsely. Smith argues:

> That Slavik was out on bail at the time this incident occurred gave him a motive to immediately slant his account of the events to make him appear more favorable to the investigating officers and, ultimately, the jury. Had he come under suspicion himself, his bail status may have been jeopardized.

Smith contends that the court's limitation on his cross-examination of Slavik violated Smith's rights under article I, section 14 of the Hawaiʻi Constitution and HRE Rule 609.1.

Article I, section 14 of the Hawaiʻi Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against the accused[.]" See State v. Brown, 145 Hawaiʻi 56, 61, 446 P.3d 973, 978 (2019); State v. Balisbisana, 83 Hawaiʻi 109, 115 n.3, 924 P.2d 1215, 1221 n.3 (1996); see also U.S. Const. amend. VI. "[T]he main and essential purpose of confrontation is *to secure for the opponent the opportunity of cross-examination*, . . . and the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross examination." State v. Acacio, 140 Hawaiʻi 92, 99, 398 P.3d 681, 688 (2017) (original brackets omitted) (quoting Balisbisana, 83 Hawaiʻi at 115, 924 P.2d 1215, 1221) (applying the sixth amendment to the United States Constitution). Accordingly:

> [A] criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby "to expose to the jury the facts from which jurors . . . could appropriately draw inferences relating to the reliability of the witness."

Brown, 145 Hawaiʻi at 61, 446 P.3d at 978 (quoting Delaware v. Van Arsdall, 475 U.S. 673, 680 (1986)).

Under HRE Rule 609.1, "[t]he credibility of a witness may be attacked by evidence of bias, interest, or motive." HRE Rule 609.1. The supreme court has stated that "bias, interest, or motive is always relevant under HRE Rule 609.1." Acacio, 140 Hawaiʻi at 99, 398 P.3d at 688 (quoting State v. Levell, 128 Hawaiʻi 34, 40, 282 P.3d 576, 582 (2012)). "[T]he appropriate inquiry 'is whether the trier of fact had sufficient information from which to make an informed appraisal of the complaining witness's motives and bias."[10] Id. (original brackets omitted) (quoting Balisbisana, 83 Hawaiʻi at 116, 924 P.2d at 1222).

Morever, the Hawaiʻi Supreme Court and this court have held that a complaining witness can be cross-examined about pending criminal charges for purposes of showing motive or bias. See Brown, 145 Hawaiʻi at 61-62, 446 P.3d at 978-79 (holding that the trial court erred in barring cross-examination as to complaining witness's pending charges arising from the same incident, and her supervised probation status resulting from a previous assault conviction); Balisbisana, 83 Hawaiʻi at 116-17, 924 P.2d at 1222-23 (holding that the trial court erred in precluding cross-examination regarding complaining witness's conviction for harassing defendant because, absent such evidence, the jury lacked information necessary to appraise witness's bias against defendant and motive to fabricate charges against him); State v. Saboq, 108 Hawaiʻi 102, 112, 117 P.3d 834, 844 (App. 2005) (holding that a complaining witness's pending sentencing in two other criminal matters "was relevant and probative of a potential bias or motive for testifying in favor of the State"). Similarly, the United States Supreme Court has held that a defendant may question a prosecution witness about the witness's pending probation status to explore the possible biases, prejudices, or motives of the witness. Davis v. Alaska, 415 U.S.

---

[10] Once this first step has been satisfied, "the trial court may then consider whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice." Acacio, 140 Hawaiʻi at 99, 398 P.3d at 688. However, "the second step is not triggered until the defendant is afforded the threshold level of inquiry under the confrontation clause[.]" Id.

308, 316-18 (1974).

Here, the Circuit Court precluded Smith from cross-examining Slavik about Slavik's pending criminal charges and bail status on June 23, 2018, because it apparently concluded that Smith had not established a "foundation as to relevance" or "other types of foundation."  However, "bias, interest, or motive is always relevant under HRE Rule 609.1," Acacio, 140 Hawaiʻi at 99, 398 P.3d at 688, and, here, Smith was attempting to establish that Slavik's arrest and bail status at the time of the alleged murder gave him a motive to lie or to slant his statements to police investigators.  The Circuit Court prevented Smith from laying that foundation at trial, when it precluded defense counsel from cross-examining Slavik about this alleged source of bias.  See HRE Rule 609.1 cmt. ("before any bias of a witness can be introduced, a foundation must first be laid by cross-examining the witness regarding the facts which assertedly prove the bias"); see also Acacio, 140 Hawaiʻi at 101, 398 P.3d at 690 ("[G]iving a defendant 'considerable latitude' during cross-examination of the complaining witness is not sufficient if the defendant is deprived of an opportunity to present evidence about the source of the complaining witness's potential bias or motive." (citing Levell, 128 Hawaiʻi 41, 282 P.3d 583)).  Under these circumstances, information about Slavik's arrest and bail status at the time of the shooting incident could have served as a basis for the jury to conclude that Slavik had a bias, interest or motive to lie to the police – and thus, ultimately, to the jury – pursuant to HRE Rule 609.1.  See Brown, 145 Hawaiʻi at 62, 446 P.3d at 979 ("[e]xclusion of the criminal charges against [the complaining witness] and the fact that [she] was on probation deprived the jury of evidence that she had an interest to shape her testimony against [the defendant] to avoid punishment and to prevent the possible revocation of her probation").  Because the Circuit Court precluded such cross-examination, the jury did not have "sufficient information from which to make an informed appraisal of the witness's motives

and bias."[11]  Acacio, 140 Hawaiʻi at 99, 398 P.3d at 688 (quoting Levell, 128 Hawaiʻi at 40, 282 P.3d at 582).  Accordingly, we conclude that the Circuit Court erred in preventing Smith from cross-examining Slavik about his pending criminal charges and bail status on June 23, 2018.

We must next determine whether the Circuit Court's error was harmless beyond a reasonable doubt.  See Acacio, 140 Hawaiʻi at 102, 398 P.3d at 691 ("Denial of a defendant's constitutionally protected opportunity to impeach a witness for bias, motive or interest is subject to harmless error analysis." (quoting Balisbisana, 83 Hawaiʻi at 117, 924 P.2d at 1223)).  "In applying the harmless beyond a reasonable doubt standard[,] the court is required to examine the record and determine whether there is a reasonable possibility that the error complained of might have contributed to the conviction."  Id. (quoting State v. Pond, 118 Hawaiʻi 452, 461, 193 P.3d 368, 377 (2008)); see Brown, 145 Hawaiʻi at 63, 446 P.3d at 980 ("the ultimate question is whether the erroneous exclusion of additional evidence could have reasonably affected the jury's verdict").  We "consider[ ] a number of factors in determining whether an error is harmless in this context, including 'the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.'"  Acacio,140 Hawaiʻi at 102, 398 P.3d at 691 (quoting Levell, 128 Hawaiʻi at 42, 282 P.3d at 584).

In Brown, for example, the supreme court concluded that the circuit court's error in precluding cross-examination of the complaining witness regarding her motives or bias favoring the prosecution might have contributed to the defendant's conviction.  145 Hawaiʻi at 62-63, 446 P.3d at 979-80.  There, the complaining witness was the only eyewitness to the entire event that gave

---

[11]  Moreover, because Smith was not afforded this threshold level of inquiry under the confrontation clause, the Circuit Court's discretion to exclude evidence under HRE Rule 403 was not operative.  Acacio, 140 Hawaiʻi at 99, 398 P.3d at 688 (quoting Levell, 128 Hawaiʻi at 40, 282 P.3d at 582).

rise to assault charges against the defendant; two additional eyewitnesses testified that they did not witness the complete incident.  Id.  Thus, the complaining witness was "the most important witness for the prosecution."  Id. at 62, 446 P.3d at 979.  But the defendant was not permitted to cross-examine the complaining witness about criminal charges she faced arising from the same incident, as well as her probation status resulting from an earlier assault conviction, which "possibly gave the State leverage over her testimony."  Id. at 62, 446 P.3d at 979.  In addition, the defendant offered testimony that directly contradicted the complaining witness's testimony.  Id.  In such circumstances, the court reasoned that "[e]vidence that cast doubt on [the complaining witness's] credibility may have affected the jury's conclusion as to her description of the events."  Id. at 63, 446 P.3d at 980.  Accordingly, the court ruled that it could not conclude beyond a reasonable doubt that the erroneous decision to exclude evidence of the complaining witness's interest in avoiding future criminal prosecution and punishment did not contribute to the defendant's conviction.  Id.

Likewise, in Acacio, the supreme court ruled there was "a reasonable possibility that the circuit court's error [in precluding cross-examination of the complaining witness regarding her motives and bias] might have contributed to [the defendant's] conviction."  140 Hawaiʻi at 102, 398 P.3d at 691.  The court reasoned that the complaining witness's testimony "was crucial to the prosecution's case because she was the only eyewitness to [the defendant's] alleged threat and abuse against her."  Id.  The court also noted that the case turned on the credibility of the defendant and the complaining witness, such that "evidence of the [complaining witness's] motive to exaggerate or fabricate her story would have been helpful for the jurors in assessing the [complaining witness's] credibility and in ultimately determining which party to believe."  Id. at 103, 398 P.3d at 692.

Similarly, here, there is a reasonable possibility that the Circuit Court's error contributed to Smith's convictions on Count 1, Murder in the Second Degree; Count 2, Reckless Endangering in the First Degree; and Count 6, Carrying or Use of

Firearm in the Commission of a Separate Felony.  On these counts, Slavik's testimony was crucial to the prosecution's case because he was the only eyewitness to the shooting incident, including the alleged murder and his own shooting.  In addition, Smith offered testimony regarding the incident that directly contradicted Slavik's testimony.  The case as to these counts thus turned primarily on the credibility of Smith and Slavik.  In these circumstances, as in Brown, evidence that cast doubt on Slavik's credibility may have affected the jury's conclusion as to his description of the events.  And while the Circuit Court allowed defense counsel to impeach Slavik as to whether he buried the replica gun, the court did not permit any cross-examination regarding the criminal charges that Slavik faced and his bail status at the time of the shooting incident, which arguably could have influenced his statements to police investigators.  See supra.  No other evidence conveyed this degree of Slavik's possible interest in falsifying or slanting his statements to the police – and, ultimately, to the jury.  On this record, we cannot conclude beyond a reasonable doubt that the Circuit Court's error in precluding cross-examination of Slavik about his pending criminal charges and bail status on June 23, 2018, did not contribute to the convictions on Counts 1, 2 and 6.  Accordingly, as to these counts, the error was not harmless beyond a reasonable doubt.

We conclude, however, that there is no reasonable possibility that the Circuit Court's error contributed to Smith's convictions on Count 4, Ownership or Possession Prohibited (operable firearm), and Count 5, Ownership or Possession Prohibited (ammunition).  Under HRS § 134-7(b), no person who has been convicted of having committed a felony, "shall own, possess, or control any firearm or ammunition therefor."  Here, prior to trial, Smith stipulated with the State that he "had previously been convicted of a felony offense, and he knew he had been convicted of a felony."  At trial, the Court informed the jury of this stipulation, and instructed the jury that it "must conclusively . . . accept as proof what the parties stipulated to."  In addition, Smith admitted in his own testimony that he

14

possessed the firearm that he brought to Painted Church Road on June 23, 2018, and that it was loaded with ammunition. The elements of Counts 4 and 5 were therefore established by independent evidence unrelated to Slavik's testimony, and Smith has shown no prejudice from Slavik's testimony as to those counts. On this record, we conclude that the Circuit Court's error in precluding cross-examination of Slavik about his pending criminal charges and bail status on June 23, 2018, was harmless beyond a reasonable doubt as to Counts 4 and 5.

Given our conclusion with respect to Counts 1, 2 and 6, we do not reach Smith's remaining points of error as to those counts. With respect to Counts 4 and 5, Smith has demonstrated no prejudice from any alleged error by the Circuit Court in preventing defense counsel from calling Arakaki as a witness, preventing defense counsel from eliciting the hearsay statement of Spruance, or admitting Detective Kohara's testimony regarding Smith's statement that he had used methamphetamine. On this record, we conclude there is no reasonable possibility that any of these alleged errors contributed to Smith's convictions on Counts 4 and 5. As previously stated, the elements of these offenses were established through independent proof, which was unrelated to the proffered testimony of Arakaki or Spruance or to the allegedly objectionable testimony of Detective Kohara. Accordingly, even if one or more of these alleged errors occurred, which we do not decide, each was harmless beyond a reasonable doubt as to Counts 4 and 5.

## III. CONCLUSION

For these reasons, the Judgment of Conviction and Sentence entered on June 26, 2019, in the Circuit Court of the Third Circuit, is:

(1) vacated as to Count 1, Murder in the Second Degree; Count 2, Reckless Endangering in the First Degree; and Count 6, Carrying or Use of Firearm in the Commission of a Separate Felony; and

(2) affirmed as to Count 4, Ownership or Possession Prohibited (operable firearm); and Count 5, Ownership

or Possession Prohibited (ammunition). The case is remanded to the Circuit Court for further proceedings consistent with this Memorandum Opinion.

DATED:  Honolulu, Hawaiʻi, August 31, 2020.


On the briefs:                          /s/ Lisa M. Ginoza
                                        Chief Judge
Jason R. Kwiat
(Schlueter, Kwiat & Kennedy, LLLP
for Defendant-Appellant                 /s/ Derrick H.M. Chan
                                        Associate Judge
Stephen L. Frye,
Deputy Prosecuting Attorney,
County of Hawaiʻi,                      /s/ Clyde J. Wadsworth
for Plaintiff-Appellee                  Associate Judge